The following constitutes the order of the Court.
Signed: September 25, 2019

_____
**Charles Novack
U.S. Bankruptcy Judge**



UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>SIMON S. CHAN,<br><br>    Debtor. | Case No. 18-40217 CN<br><br>Chapter 7 |
| ANDREW KINGSDALE,<br><br>    Plaintiff,<br>vs.<br>SIMON CHAN,<br><br>    Defendant. | Adversary No. 18-4068<br><br>**MEMORANDUM DECISION RE: DISCHARGEABILITY OF DEBT** |

    On July 31, 2019, this court conducted a trial in this adversary proceeding. All appearances were noted on the record. The following constitutes this court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052:

    Plaintiff Andrew Kingsdale is a licensed California attorney who represented defendant Simon Chan in a Contra Costa County Superior Court action which ultimately resulted in a substantial, pre-petition judgment against Chan. Chan failed to pay $65,187.64 in legal fees that Kingsdale accrued while representing Chan, and he claims that Chan defrauded him when Chan made certain representations regarding payment of Kingsdale's mounting fees to prevent Kingsdale from withdrawing as his counsel.

1

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Kingsdale asserts that his claim is non-dischargeable under Bankruptcy Code § 523(a)(2).

Chan retained Kingsdale on December 17, 2015 to represent him in Contra Costa County Superior Court where he was being sued for compensatory and punitive damages arising out of a failed real estate deal. Kingsdale and Chan signed an "Engagement Agreement" in which Chan agreed to pay Kingsdale's monthly invoices for the time and costs incurred in representing Chan. Chan timely and fully paid Kingsdale's January - March 2016 invoices. Chan only made a partial payment on Kingsdale's April 2016 invoice, and by July 2016, Chan was substantially in arrears on Kingsdale's invoices (to the tune of $40,306,96). On July 11, 2016, Kingsdale informed Chan by email that he needed to be paid, that he was willing to "discuss strategies for dealing with this situation," and, by inference, that he would withdraw from the case if Chan did not propose a viable payment solution. [Exh. 3]. Kingsdale thereafter presented Chan with an amended Engagement Agreement that limited the scope of his work. Chan did not sign the amended Engagement Agreement but instead informed Kingsdale that he would pay Kingsdale's past invoices by refinancing his Danville, California residence.[1] Chan's August 5, 2016 email to Kingsdale stated that:

> In view of the increased expenses and amount overdue, I don't think I can keep up with the fee payment without refinancing my mortgage. My loan broker told me I can do a cash-out loan for $100-200k. Can you bear with me because I need to keep a minimum balance for a month or two to apply for this refinancing? If not, I'll be constantly behind and won't be able to catch up with the expenses.
>
> I don't have any issue with your billing so far and I really appreciate your great and attentive professional services. But I need your understanding to give me the breathing room to allow this loan processed. [Exh. 6].

Kingsdale agreed not to withdraw based on this representation. Kingsdale credibly testified that he discussed the refinance with Chan on August 12, 2016 and immediately sent Chan a confirming email, which stated: "Good talking with you this afternoon. Based on our conversation, I understand that you are working with a loan officer at Union Bank on obtaining a loan for approximately $200k (maybe a little less), and that you expect this loan to be funded within the next two months. You also said that you have no problem with my invoices and will pay the full balance plus a $5,000 retainer once the loan is funded. […] Please correct

---

[1] Kingsdale's amended Engagement Agreement disclosed that he had no jury trial experience, and he recommended that Chan hire separate or additional trial counsel. While Chan testified that Kingsdale had not previously disclosed this to him, the court rejects Chan's argument that this is why he failed to pay Kingsdale from the refinance proceeds.

me if any of the above is not correct." [Exh. 7]. Chan did not respond to the email.

Kingsdale continued to represent Chan in the Contra Costa County Superior Court action based on this promise to pay him from the refinance proceeds. Each time Kingsdale inquired into the status of the refinance, Chan would inform him that it was in process and that he could not make interim payments on the fees due to his need to maintain a certain bank balance to qualify for the refinance. Chan also requested that Kingsdale not contact his loan broker to discuss the refinance. *See*, *e.g.*, Exhs. 12, 13, and 14. On November 2, 2016, Kingsdale informed Chan that he was withdrawing from the case due to his failure to pay the monthly invoices. Chan's November 8, 2016 email response beseeched Kingsdale not to withdraw given the pending refinance. His email asked Kingsdale to "... hold off a little? I'm still waiting for the refinance to finally close. I can't write any check from my bank account until the review is finished. I know this is extremely unfair to you. I hope you understand that is a regular work-flow for any refinancing event. I can agree to let you off the hook from my case. I can't even retain another lawyer during this situation. Please give me 1 more week until 11/15 or 11/25 the latest to close this situation. We'll file a substitution of attorney without a court order."

Chan's refinance apparently closed in December 2016; none of the cash proceeds were used to pay Kingsdale's overdue invoices. Instead, Chan used $60,000.00 of the refinance proceeds to retain new counsel, which represented him through trial in the Contra Costa Superior Court action.

Kingsdale filed his motion to withdraw in November 2016 which was granted in January 2017. By that time, Kingsdale's unpaid invoices totaled $65,187.64. [Exhs.19, 20].

**Discussion**

The Bankruptcy Code prohibits debtors from discharging debts for money, property, services or credit obtained by "false pretenses, a false representation, or actual fraud." *Lamar, Archer & Cofrin, LLP v. Appling,* 138 S.Ct. 1752, 1757 (2018), citing Bankruptcy Code §523(a)(2)(A). A debt is incurred by false pretenses or false representations if the debtor knowingly makes false representations with the intent and purpose of deceiving the creditor, which the creditor relies on and sustains losses as a proximate result. *In re Martin,* 2019 Bankr. LEXIS 2073, *18 (Bankr. C.D. Cal. 2019), citing *In re Sabban,* 600 F.3d 1219, 1222 (9th Cir. 2010). Kingsdale must establish each element by a preponderance of the evidence.

Kingsdale's testimony, the parties' emails, and Chan's retention of new counsel immediately upon

3

the close of the refinance demonstrate, by a preponderance of the evidence, that he has satisfied each element of § 523(a)(2)(A)[2]. While Chan disputed at trial that he harbored any fraudulent intent, this court does find him to be a credible witness. Chan testified that he decided not to pay Kingsdale after 1) learning that Kingsdale had never tried a case and 2) determining that Kingsdale's time was excessive and included time spent on unnecessary depositions. This testimony is belied by Chan's own emails. Chan repeatedly informed Kingsdale that he appreciated his work, repeatedly requested that he not withdraw, and stated that he would pay him after the refinance closed. The inference is unmistakable that Chan would use the refinance proceeds to pay Kingsdale's accrued balance.[3] Chan also presented no evidence that his income as a G.E. engineer was sufficient to pay his accrued legal fees. His testimony was further undercut by the marital settlement agreement he signed in December 2016, which obligated him to make substantial monthly child and spousal support.

Simply, Chan's repeated representations that he would pay Kingsdale with refinance proceeds were knowingly false and made to forestall Kingsdale's motion to withdraw. Kingsdale relied on the representations and continued to expend substantial time and incur significant costs on Chan's behalf until he learned that Chan had no intention of paying his legal bills.

Kingsdale claims that Chan's fraud resulted in damages totaling $65,187.64. This amount is, however, the full amount of Chan's legal bill, which includes time spent and costs incurred before Chan's first, fraudulent representation (contained in his August 5, 2016 email). Kingsdale's unpaid fees and costs before this time therefore were not a product of Chan's fraud. Kingsdale's time records demonstrate that he billed $24,880.68 after August 5, 2016 [see Exh. 29]. Accordingly, Kingsdale is entitled to a nondischargeable judgment of $24,880.68 under Bankruptcy Code §523(a)(2)(A), which will accrue post-judgment interest at the federal rate. Kingsdale did not argue in his post-trial brief that he is entitled to a judgment under Bankruptcy Code §523(a)(2)(B) or 523(a)(6), and the court will enter judgment in Chan's favor on those claims.

---

[2] Actual fraud under § 523(a)(2)(A) need not be at the inception of the transaction. *See Husky International Electronics, Inc. v. Ritz*, 136 S.Ct. 158, 1589 (2016).

[3] Chan learned about Kingsdale's lack of jury trial experience in July 2016. If Chan found this to be so earthshattering, why did he not fire Kingsdale?

Kingsdale shall submit a judgment consistent with this decision.

**\*\*\* END OF ORDER \*\*\***

Adversary No. 18-4068

**COURT SERVICE LIST**

Recipients are ECF participants.